## McKENTY vs. GLADWIN.

*Twelfth Judicial District Court, July, 1857.*

PROMISSORY NOTE—INTEREST—FRAUD.

The ante-dating ot a Promissory Note is not of itself sufficient to make it void, and is not unlawful, if done for the purpose of carrying out the intention of securing the the payee.

Including the interest in a Promissory Note does not destroy its validity.

If any part of a promissory note is added to the amount due the payee for the benefit of the maker, to hinder, delay, or defraud creditors, it will render the whole void and fraudulent.

Action to recover $25,912 due on a promissory note, dated June 4th, and payable ten days after date, without grace. Defendants failed on the 18th of June, and plaintiff is the first attaching creditor. Their liabilities are $190,000. Assets, $80,000, besides stock in store which has realized $40,000 at auction. Garrison, Morgan, Fretz & Ralston, subsequent attaching creditors, and who have since obtained judgment for $8,896 against Gladwin, Hugg & Co., intervened for the purpose of setting aside plaintiff's attachment, on the ground of collusion and fraud. They allege unless the debt due them be secured by their attachment, the same will be in imminent danger of being wholly lost, and there is no other property or estate of the said Gladwin, Hugg & Co. on which said attachment can be levied, except that seized by the Sheriff. That if said property seized by the Sheriff be first applied to the satisfaction of the debt due McKenty, the proceeds thereof will be absorbed, and the claims of intervenors and other attaching creditors against defendants will be lost to them. But if the demand of McKenty be adjudged fraudulent and collusive, and therefore void as against intervenors, then the said property and effects, so attached prior to that of intervenors,, will be sufficient to satisfy the debts due by defendants to the other attaching creditors. Wherefore the intervenors have a direct interest to prevent the recovery by said McKenty of a judgment in this cause; and for the reason why he is not entitled to recover, they allege and set forth that the promissory note of Gladwin, Hugg & Co., mentioned in McKenty's complaint, is fraudulent and collusive, and was made without any good or valuable

consideration, and was executed and delivered with intent to defraud, hinder and delay the creditors of said Gladwin, Hugg & Co., which intent was well known to McKenty when he accepted said promissory note. Intervenors further allege that the making of the promissory note and the issuing of attachment thereon was a fraudulent device, arranged between defendants and McKenty for the purpose, and with the intent of defrauding the creditors of defendants.

Gladwin, Hugg & Co. failed on the 18th June, and have since petitioned for the benefit of the Insolvent law.

Upon this trial it was proved by Jackson McKenty, who was examined as a witness by intervenors, that the note was made on the 15th or sixteenth of June last, in anticipation of the failure of Gladwin, Hugg & Co., and for the purpose of securing to McKenty the amount of sales and loans made by him to defendants, and also for his liability upon endorsements of their notes. The note for $25,912.05 was antedated to the 4th June, and payable ten days after date, without grace, and bore interest at two and a half per cent. per month.

The consideration of this note was as follows :

| | | | | |
|---|---|---|---|---|
| May 18, | 1857. | 86 casks of Hams, ................... | $4218.66 |
| " | 19, | " | 100 " " ................... | 5082.21 |
| " | " | " | Endorsement of defendants' note, payable June 19, ........................ | 5000.00 |
| " | 22, | " | 25 barrels of Flour, ................... | 306.25 |
| June | 3, | " | 200 " " ................... | 2400.00 |
| " | 4, | " | Endorsement of defendants' note, payable June 19th, ........................ | 3775.50 |
| " | " | " | Accommodation notes to defendants, due on June 19th, ........................ | 3879.43 |
| " | 5, | " | Loan to defendants, ................... | 1050.00 |
| | | | Total, ................................... | $25,912.05 |

The one hundred casks of hams charged May, 19th were loaned for the purpose of hypothecation for the benefit of Gladwin, Hugg & Co. They were purchased from McKenty about the first of June by defendants. The sale on June 3d, of two hundred barrels of flour, was

payable in July. Plaintiff admitted the note was given for the purpose of enabling him, in case it should become necessary, to attach the property of defendants as security for the foregoing amount, it being doubtful at the time it was given whether Gladwin, Hugg & Co. would be able to get through their payments. At the time of making the note for $25,912 05 none of the debts had matured. The debt for the merchandize being payable in July and the notes on June 19th.

Mr. McKenty testified he was a speculator in merchandise; the note was made on the 15th or 16th June; positive it was not made on the 17th; it was made and signed by Mr. Hugg in his office; it is not usual for me to take as large notes as this; there may have been other persons present at the time, but I do not remember; I had no particular reason for dating the note on the fourth; I am not aware Mr. Hugg knew it was ante-dated; I do not think it was mentioned; the motive I had for putting the date on the fourth was that I would receive more interest, and that other notes from Gladwin, Hugg & Co. were made on the same day. Often endorsed for defendants, and Mr. Hugg told me, some time before, if his house ever failed, they would secure me; I had met Mr. Hugg during the day and he promised to come and sign the note; when he came I had the note drawn up in my handwriting; I told him I would pay all the endorsed notes when they fell due. There was no agreement or paper passed between us and no understanding whatever relative to the note more than settling my claims against Gladwin, Hugg & Co.

The examination of McKenty was mainly a close inquiry into his monetary operations for about a fortnight preceding the failure of Gladwin, Hugg & Co., in reference to the notes made by him and accommodation extended to defendants. It appeared that, on the 17th of June, McKenty procured a discount of $5000 from Drexel, Sather & Church, upon his own note, and it was claimed on the part of the intervenors that the discount was obtained by pledging the note of $5082 21, given by the defendants, with other notes, as collateral. It was claimed, also, on behalf of intervenors, that there was no proof of the delivery, by McKenty, of 125 barrels of the flour, as testified in his direct examination. The notes of $5000, $3957 50, and $3879 43, were all paid by McKenty at their maturity, and all the

prior notes which had been held and endorsed by him were given up to defendants before the trial.

Mr. Hugg was called by plaintiff as a witness. He testified that, on the 13th of June, he first conversed with plaintiff about giving the note for $25,912. It was understood McKenty was to take up all the other notes as they fell due, and the one sued on was given for that purpose. Asked him why it was not made payable on demand; McKenty said it was of no consequence, as all the other indebtedness had been created about the 4th of June. Asked if he was prepared to meet the notes previously given; McKenty said it would be pretty tight work, or something to that effect. There was no talk of attaching and no other paper passed between us. I told him I would call again and let him know what show we had of getting along. Called a second time and told him he had better attach, as we could hold out no longer. First met McKenty on Montgomery street, the 15th of June, and asked him to go with me to Wilson & Alexander's at 12 o'clock. Took a private room, and told him I was afraid we should fail: that I hardly thought we could go through next steamer day; said I was anxious to secure him some way, as he was the best friend I had in the country; offered to give a note for our entire indebtedness in lieu of the others out standing. McKenty expressed surprise, as he had no idea of our failing.

On the foregoing facts, intervenors claimed that the transaction was fraudulent in law, if not in fact, not only because the effect of the giving of $25,912 was in the nature of an assignment for the benefit of creditors, and therefore void under the insolvent law, but also that it was fraudulent because it was an attempt to sue where the subject matter of suit was not yet due. It was further contended, that the claim of interest of two and a half per cent. per month, was also such a fraud as would vitiate the whole transaction, by reason that it was giving to McKenty a much greater amount than he would otherwise be authorized to collect. The ante-dating of the note was also a badge of fraud, and evidence of collusion between McKenty and defendants.

On the part of plaintiff it was contended that inasmuch as the $25,912 note was given to be used, in case that Gladwin, Hugg & Co. should not be able to get through their payments, that therefore

it was not a fraud on the part of McKenty to pledge the $5082 note on the 17th June. That the transaction was not contrary to the provisions of the insolvent law, and that the preference given by defendants to McKenty being merely for the purpose of securing him, was legal, and that the fact of interest being included in the note did not vitiate the note itself. The Court and Jury were warranted in disregarding the stipulation for interest.

Plaintiff waived all claim for interest and asked a judgment for the principal alone.

*S. V. Smith* and *McAllister*, for plaintiff.

*Shafter, Park & Shafter* and *Crockett & Page*, for intervenor.

Defendant did not appear by attorney.

NORTON, J., charged the Jury that if the note for $25,912 was given in good faith for the purpose of enabling McKenty to secure himself, and without any view of benefit to defendants, or without any intent to hinder or delay the other creditors, then the transaction was a lawful one, and it was not obnoxious to any statute of this State, or the Insolvent law. The ante-dating of the note was not of itself sufficient to make it void, and if it was done for the purpose of carrying out the intention of securing plaintiff, it was not unlawful. Including the interest in the note did not destroy its validity, but it would be good to the extent of the money due thereon for sales and amounts paid by plaintiff upon his endorsements. If any part of the note was added to the amount due plaintiff, and included in it with the intent of benefiting defendants, or hindering, or delaying creditors, it would render the entire note void. The question for the Jury to determine will be if the note made to McKenty was for the object of hindering or delaying creditors, or for the benefit of defendants. If they find it was executed for that purpose, the intervenors are entitled to a verdict. If they find the converse true, then plaintiff is entitled to recover. But in arriving at a conclusion it would be their duty to take into consideration all the facts and circumstances laid before them.

The Jury found in favor of plaintiff.